HOUSTON & T. C. R. CO. v. PATTERSON. (No. 7691.)

(Court of Civil Appeals of Texas. Dallas. Feb. 24, 1917.)

CARRIERS ⬤228(5)—LIVE STOCK—ACTION— EVIDENCE—SUFFICIENCY.

In action by shipper for damages for negligent transportation of live stock, evidence *held* sufficient to show defendant's negligence as charged, and that it was the proximate cause of the injuries complained of.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960.]

Appeal from Navarro County Court; R. R. Owen, Judge.

Action by J. H. Patterson against the Houston & Texas Central Railroad Company. From judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and R. S. Neblett and Gordon Damon, both of Corsicana, for appellant. W. A. Tarver, of Corsicana, for appellee.

TALBOT, J. The appellee sued the appellant to recover damages alleged to have been sustained on account of injuries inflicted up-

on certain of his horses and mules while being shipped over appellant's railroad from Corsicana, Navarro county, Tex., to Houston, Harris county, Tex. The petition alleged, in substance, that appellee's horses and mules were injured as the result of the negligence of appellant; that the negligence consisted in the rough handling of the train and car in which said horses and mules were being transported, whereby they were thrown against the sides and ends of the car and against each other, thereby badly skinning and bruising them; that one of the horses was so badly injured that he had to be removed from the car before the shipment reached its destination. Appellee's damages were laid at $430. The appellant answered by general demurrer, and general denial. It also specially denied that said horses and mules were injured, or, if injured, that their injuries were due to its negligence in handling them. The case was tried before the court without a jury and resulted in a judgment in favor of the appellee for the sum of $250. Appellant's motion for a new trial having been overruled, it perfected an appeal to this court.

The single assignment of error is that: "The judgment of the court is contrary to the evidence, in that the evidence clearly showed that said horses and mules were handled by the railroad in a reasonably careful manner and without negligence, and that their injuries, if any, were due to the vicious propensities of the animals shipped, and not to the fault of the defendant."

There are two propositions advanced under the assignment of error, but the first presents the contentions of the appellant, and the second need not therefore be stated. The proposition contended for is that:

"Where the evidence clearly shows that a shipment of live stock were transported with ordinary care and reasonable diligence, then the injuries sustained, if any, will be attributed solely to the inherent nature and proper vice of the animals and will not be chargeable to the carrier, and a judgment in favor of the shipper will not be sustained."

Whether a common carrier is responsible as an insurer for live stock transported by it, as in the case of inanimate freight, or is absolved from liability when the evidence fails to show negligence on its part during the transportation thereof need not in the view we take of the evidence in this case, be considered. There are a number of cases of the appellate courts of this state upon the question in which will be found some apparent conflict, but that a carrier is not liable for damages resulting solely from the act of God, the public enemy, the act of the owner, or vicious propensities or inherent vice of the animals themselves, is, as we understand, the universal holding of the courts. The evidence in the case at bar is sufficient, we think, to justify the conclusion that the appellant was guilty of negligence in the transportation of appellee's horses and mules, substantially in the manner charged, which was the proximate cause of the injuries to them of which he complains. This being true, we would not be warranted in disturbing the judgment of the trial court. It is practically undisputed in the evidence that appellee's horses and mules were in good condition when delivered to appellant for transportation, and that it sustains the court's finding that they were injured in transit, although conflicting, cannot be successfully denied. The number of the animals injured and the character and extent of their injuries appears clearly stated in the testimony of the appellee, and there is no assignment of error complaining that the judgment is excessive.

J. L. Emmons, a witness offered by the appellee, testified, among other things, that he accompanied the shipment; that most of the horses and mules were unloaded at Wellborn, a station on appellant's road; that they were unloaded because one of the horses was down in the car and they were unable to get him up. He further testified, in effect, that he got in the car with the horses at College Tank to keep the horse that was down from being trampled upon; that there was considerable jolting and jostling of the train and car; that this was to such an extent as to jar him and the stock; that when they got to Wellborn the employés of the railway company switched the car of horses backward and forward and jolted and jostled them around and caused them to be thrown against the sides of the car and injured; that the appellant had a very sorry place for handling the stock at Wellborn; that a bay horse was injured there; that he fell through the trapdoor when they were reloading the horses and mules at Wellborn; that he fell through the trapdoor and skinned his hind leg up to the thigh.

On the other hand, E. B. Montgomery, a witness for the appellant, testified:

"In the handling and running of this train there was no more jerking or jolting than is in any freight train. While I was up at the head of the train, I noticed that one of the horses in Mr. Patterson's car was down. When we got to Wellborn, where the stock pens were, the stock were unloaded and this horse taken out of the car. We got them all out because they were kicking and fighting so we were afraid to go in there and get the horse out. I didn't want to go in there where those horses were kicking. In reloading the horses at Wellborn, there was some fighting and kicking among them. There were one or two fighting and kicking horses and a kicking mule among them. We had some trouble in reloading them. When I noticed that the horse was down in the car when we were at College Station, the rest of the horses were fighting and kicking around in the car."

This witness, while testifying that none of the horses was injured in reloading them at Wellborn, said that one of them got his foot and leg down between the running board and the car. He said the trapdoor of the pen at Wellborn was all right, but he further said:

"He (Emmons) got an axe and cut down the door so it would fit. They had to cut that trap-

door to make it fit. The door didn't fit without being cut; it fit after it was cut."

As to the injury received by this horse, Montgomery said: "The hair was knocked off of his leg from his ankle to his knee."

The appellant did not plead that the injuries to appellee's horses and mules were occasioned by their vicious propensities or inherent vice, and appellee contends that without such plea the defense that the injuries sustained by them resulted from such propensities and vice cannot be relied on. But we shall not stop to consider and determine whether or not it was essential to appellant's right to avail itself of such defense that it be both pleaded and proved. The evidence, as we have held, was sufficient to show that the injuries to the horses and mules were caused by the negligence of appellant, and, even though there was evidence which would have justified a finding that these injuries were the result of their vicious propensities and could be considered without a plea to that effect, the judgment should not be reversed.

Affirmed.